Statement of the Case.
MONROE, J.
Plaintiff and defendants, Hart and Gorham, and one or two others, were opposing candidates, at a primary election held in Lake Charles on January 28, 1913, for the Democratic nomination to the office of member of the council and commissioner of public parks and streets, and, the chairman having presented to the Democratic committee, by which the election was ordered, tabulated returns showing that Hart had received 280, Gorham 286, and plaintiff 180, votes, plaintiff offered a written protest, setting forth that he was a qualified elector and owned property, within the limits of the city, which was assessed at not less than $300, but that neither of the defendants owned such property, and hence, under the city charter, were" ineligible to said office, and praying that he be declared to have received 178, and the highest number of, votes cast, and that defendants be declared ineligible. The committee declined to entertain the pro *290 test, and plaintiff then brought this suit in the district court, setting up the facts stated and praying for judgment decreeing him to be “entitled to become a candidate in the second Democratic primary election, hereafter to be held for the purpose of selecting a Democratic nominee for said office.” Defendants filed exceptions to the jurisdiction of the court, and of no right, and no cause, of action, and there was judgment sustaining the exceptions last mentioned, from which plaintiff prosecutes this appeal.
Opinion.
The judge a quo maintained the exception of no right of action, upon the authority of the ruling made by this court in the case of Roussel v. Dornier, 130 La. 367, 57 South. 1007, 39 L. R. A. (N. S.) 826, to the effect that, under the then existing law, the question of the eligibility vel non of a candidate receiving a majority of the votes cast in a primary election could be determined only in an action by the state; and he maintained the exception of no cause of action on the ground that said question is governed by R. S. 2446, taken in connection with certain provisions of the Constitution, under which no property qualification is required.
Counsel for plaintiff argue that the decision relied on by the learned judge a quo, upon the exception of no right of action, wa's' based on the law in force at the date of its rendition, whereas the instant case is governed by Act 198 of 1912, which was approved at a later date. The conclusion reached by us on the exception of no cause of action renders it unnecessary that we should express any opinion upon the merits of the other, and we therefore pretermit its consideration. Lake Charles was originally incorporated by Act 79 of 1867, which prescribed no property qualification for its officers. In 1899, the mayor and council, proceeding under the authority of section 43 of Act 136 of 1898, prepared and adopted an amendment and re-enactment of said legislative charter, which was duly advertised and approved, as required, and which provides, among other things, that the mayor “shall be * * * an owner of real estate, situated within the corporate limits, assessed for taxes at a valuation not less than $300,” and that “the qualifications of the aldermen shall be the same as are prescribed for the mayor.”
In 1912, the citizens of the municipality, by vote of the electors, adopted the form of government authorized by Act No. 207 of the session of that year, which form consists, in the main, of a council composed of a mayor and two members, each of whom is also called a “commissioner,” and to each of whom is assigned a certain department of the government; but, as the act in question purports to preserve to the corporation all the powers previously possessed which are not in conflict with its provisions, and as we find nothing therein upon the subject of the qualifications of the officers, we do not perceive that it affects the question here presented. On the other hand, section 43 of Act 136 of 1898, under which the charter of the city was amended and re-enacted, reads as follows:
“That, when a municipality, now existing, which has not come under the provisions of this act, shall desire to amend its charter, the same may be done in this way; the mayor and board of aldermen may prepare, in writing, the desired amendments, have the same published; * * * the proposed amendments shall then be submitted to the Governor, who shall submit them to the Attorney General for his opinion. If the Attorney General be of the opinion that the proposed amendments are consistent with the Constitution and laws of the United States, and of this state, including this act, the Governor shall approve the proposed amendments. If, after publication made, one-tenth of the qualified electors of the municipality shall protest against the proposed amendments, or any of them, the Governor shall not approve the ones protested against until they shall be submitted to, and ratified by, a majority of the electors of the municipality. Amendments, when approved by the Gov *292 ernor, shall be recorded at the expense of the municipality in the office of the Secretary of State and upon the records of the mayor and board of aldermen, and, when so recorded, shall have the force and effect of law. * * * ”
When the act thus quoted, was adopted, the Constitution provided (as it now provides):
“Art. 24. Every elector, under this Constitution, shall be eligible to a seat in the House of Representatives, * * * provided * * * he has been a citizen of the state for five years and an actual resident of the district or parish from which he may be elected for two years immediately preceding his election.”
[1]No elector was, or is, required by the Constitution to own real estate or other property, unless he is unable to read and write or to register under the “grandfather” clause.
Section 2446 of the Revised Statutes provided, and now provides, that:
“All persons shall be eligible to hold office under all political corporations, granted or to be granted, by the General Assembly of Louisiana, when, by the Constitution of the state, for the time being, the same class of persons are eligible to the House of Representatives of the General Assembly of this state.”
It is evident, therefore, that the property qualification, contained in the amendment to the charter of Lake Charles, was inconsistent with the law of the state, as contained in the Revised Statutes.
And it was also inconsistent with Act 136 of 1898, itself, since that act declares (referring to the “mayor,” in section 20):
“He shall be a qualified elector of the municipality, and he must have been, for two years, a resident of the parish.”
And (section 21):
“The qualifications of the aldermen shall be the same as are prescribed for the mayor, and, in addition, those elected from and by wards must be residents of their respective wards.”
Hence the amendment was unauthorized by the act under which it was proposed, since that act contemplates that only such amendments shall be approved and have the force and effect of law as “are consistent with the Constitution and laws of the United States and of this state, including this act.”
Again, Act 49 of 1906, under which (as amended) the primary election out of which this litigation has arisen was held, provides:
“Sec. 9. * * * That the qualifications of voters and of candidates in all primary elections held under this act shall be the same as now required by the constitution and election laws of this state for voters at general elections, subject to an additional political qualification which may be prescribed by the state central committees of the respective political parties,” etc.
[2] It will thus be seen that whilst, under the amended charter of Lake Charles, the mayor is required to possess the property qualification, under the primary election law the candidate for the nomination to that office is required to possess only the qualifications of an elector, as prescribed by the Constitution and election laws of the-state.
“Whether the necessary qualifications must exist at the time of the election or at the time of entering upon the duties of the office may depend,” says a recognized authority, “upon the wording of the statute, which may refer to the one or the other.” A. & E. Enc. of Law, vol. 23, p. 330.
[3] The word “elegible,” though defined as meaning “fitted or qualified to be chosen or elected; legally or morally suitable; as, an eligible candidate” — has, not unfrequently, been held to relate to the time of the assumption of an office rather than to that of the election thereto. A. & E. Ene. of Law, vol. 10, p. 972, note 1.
In this case there is no language used which would authorize the conclusion that it was the intention to require the candidates for nominations to own assessed property; but, to the contrary, the only law which authorizes such candidacy declares, explicitly, that the qualification of the voters and candidates, alike, shall be merely those of electors, under the Constitution and general election laws of the state, subject to such addition as the respective political parties may prescribe.
*294 Even, therefore, if the amendment requiring the property qualification were authorized, as applying to the time of the assumption, by the mayor and councilmen or commissioners of Lake Charles, of the duties of their offices, it does not purport to do more than that, and hence could not he held to apply to persons who are merely candidates for the nominations to those offices.
The judgment appealed from is therefore affirmed.